UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                                                       :
MASON TENDERS DISTRICT COUNCIL                         :
WELFARE FUND, PENSION FUND,                            :
ANNUITY FUND, TRAINING FUND,                           :
HEALTH AND SAFETY FUND, and                            :
DOMINICK GIAMMONA, as Funds'                           :          17-cv-4493 (VSB)
Contributions/Deficiency Manager,                      :
                                                       :          **OPINION & ORDER**
                                   Plaintiffs,          :
                                                       :
                -v-                                    :
                                                       :
LJC DISMANTLING CORP.,                                 :
                                                       :
                                   Defendant.          :
                                                       :
-------------------------------------------------------X

Appearances:

Bruce Lawrence Listhaus
Denise Kennedy
Joy Kim Mele
Andrew A. Gorlick
Gorlick, Kravitz & Listhaus, P.C.
New York, New York

Michelle Adams Callner
Redman Law, PLLC
New York, New York
*Counsel for Plaintiffs*

Michael Marc Rabinowitz
Rabinowitz and Galina, Esqs.
Mineola, New York

Susan Joy Deith
Garden City, New York
*Counsel for Defendant*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___9/11/2019___

VERNON S. BRODERICK, United States District Judge:

Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, Training Fund, and Health and Safety Fund (the "Funds")—jointly administered, multi-employer, labor management trust funds established and maintained pursuant to various collective bargaining agreements in accordance with Sections 302(c)(5) and (c)(6) of the Labor Management Relations Act of 1947, 29 U.S.C. §§ 186(c)(5), (c)(6)—along with Dominick Giammona, in his fiduciary capacity as the Funds' Contributions/Deficiency Manager (together with the Funds, "Plaintiffs"), bring this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*., and New York law. Plaintiffs sued LJC Dismantling Corp. ("LJC") after LJC failed to remit fringe benefits, dues checkoffs, and Political Action Committee ("PAC") contributions to the Funds pursuant to a collective bargaining agreement. Before me are Plaintiffs' motion for summary judgment and LJC's cross-motion for partial summary judgment. Because LJC stipulated to the majority of Plaintiffs' deficiency calculations and because I find that there is no genuine issue of material fact as to Plaintiffs' remaining calculations, Plaintiffs' motion for summary judgment is GRANTED and LJC's cross-motion is DENIED.

I.   **Factual Background**[1]

The Funds provide fringe benefits to eligible employees on whose behalf employers in the construction industry contribute to the Funds pursuant to collective bargaining agreements ("CBAs") with the Mason Tenders District Council of Greater New York (the "Union"), to which such employers are bound. (Pls.' 56.1 ¶ 4.)[2] The Funds are third-party beneficiaries of

---

[1] Unless otherwise noted, I find the facts referenced in this section undisputed.

[2] "Pls.' 56.1" refers to Plaintiffs' Rule 56.1 Statement, filed August 24, 2018. (Doc. 36.)

these CBAs.  (*Id.* ¶ 5.)  At all times relevant to this action, CBAs were in effect between the

Union and the New York City Demolition Contractors Association ("DCA") and the Interior

Demolition Contractors Association ("IDCA").  (*Id.* ¶¶ 13–14, 16–17.)  Defendant LJC is a

member of both the DCA and IDCA and was thus bound by those CBAS.  (*Id.* ¶¶ 12–17.)

The CBAs require LJC to make fringe benefit contributions to the Funds for each hour of

work performed by its employees within the trade and geographic jurisdiction of the CBAs.  (*Id.*

¶ 18.)  The CBAs also require LJC to deduct and remit dues checkoffs and PAC contributions

from the wages of LJC employees performing that work.  (*Id.* ¶ 19.)  The CBAs further require

LJC to permit the Funds to inspect and audit LJC's books and records to confirm payment of all

contributions owed pursuant to the CBAs.  (*Id.* ¶¶ 20–21.)

Beginning in August 2012, Plaintiffs' accounting firm, Schultheis & Panettieri, LLP

("S&P"), conducted three audits of LJC's books and records.  (*Id.* ¶¶ 22–24; *see also* Pls.' 56.1

Counterstatement ¶ 32.)[3]  The first of these audits (the "First Audit") covered the period from

January 1, 2009 through March 31, 2013, and revealed that LJC failed to pay $353,088.22 in

principal fringe benefit contributions, and failed to remit $38,393.37 in principal dues checkoffs

and PAC contributions, reflecting a total of 20,518.90 unreported employee hours.  (Pls.' 56.1

¶ 22.)[4]  The second of these audits (the "Second Audit") covered the period from April 1, 2013

through March 31, 2016, and revealed that LJC failed to pay $180,196.16 in principal fringe

benefit contributions, and failed to remit $16,654.67 in principal dues checkoffs and PAC

contributions, reflecting a total of 9,211.50 unreported employee hours.  (*Id.* ¶ 23.)  The last of

---

[3] "Pls.' 56.1 Counterstatement" refers to Plaintiffs' Counterstatement to Defendant's Rule 56.1 Statement and
Additional Material Facts, filed November 30, 2018.  (Doc. 64.)

[4] With respect to each of the three audits, LJC does not dispute that the audits were performed but appears to contest
the "accuracy, sufficiency, and admissibility" of the audits.  (LJC 56.1 Counterstatement ¶¶ 22–24.)  ("LJC 56.1
Counterstatement" refers to Defendant's Response to Plaintiffs' Rule 56.1 Statement, filed November 27, 2018.
(Doc. 59.).)

these audits (the "Third Audit") covered the period from April 1, 2016 through October 1, 2017, and revealed that LJC failed to pay $109,589.70 in principal fringe benefit contributions, and failed to remit $10,271.12 in principal dues checkoffs and PAC contributions, reflecting a total of 4,896.50 unreported employee hours.  (*Id.* ¶ 24.)

## II.   **Procedural History**

Plaintiffs filed their complaint on June 14, 2017, alleging claims pursuant to ERISA § 515, 29 U.S.C. § 1145, as well as New York breach of contract claims, for LJC's allegedly delinquent fringe benefit contributions, dues checkoffs, and PAC contributions associated with the First Audit period.  (*See generally* Doc. 1.)  Plaintiffs also sought an order directing LJC to permit a further audit of its books and records.  (*Id.* ¶¶ 56–58.)  On January 4, 2018, Plaintiffs filed an amended complaint, which added claims for unpaid fringe benefit contributions, dues checkoffs, and PAC contributions associated with the Second and Third Audit periods.  (*See generally* Doc. 19.)[5]  In addition to payment of all delinquent contributions and dues checkoffs, Plaintiffs seek prejudgment interest, liquidated damages, audit costs, and reasonable attorney's fees.  (*Id.* at 22–25.)

Plaintiffs served their First Request for the Production of Documents and their First Set of Interrogatories on LJC on November 22, 2017.  (Pls.' 56.1 ¶¶ 58–59.)  LJC did not respond to either of these discovery demands.  (*Id.*)

On March 16, 2018, the parties entered into a Stipulation, pursuant to which LJC agreed that it "d[id] not dispute" the findings of the Second and Third Audits.  (Stip. ¶¶ 8–9.)[6]  With

---

[5] The amended complaint also adds Benedict Versaci, LJC's Vice President, as a defendant.  (*See* Doc. 19.) Plaintiffs voluntarily dismissed all claims against Versaci on August 27, 2018.  (Doc. 42.)

[6] "Stipulation" or "Stip." refers to the parties' March 16, 2018 Stipulation and Order, which I so ordered on March 23, 2018.  (Doc. 24.)

respect to the First Audit, the parties agreed that LJC's dispute was limited to the First Audit's findings of unreported hours for five individuals (collectively, the "Disputed Individuals"). (*Id.* ¶ 10.) On March 26, 2018, Plaintiffs served their First Set of Interrogatories as to the Disputed Individuals; LJC failed to respond. (Pls.' 56.1 ¶¶ 38–39.) Plaintiffs served Requests for Admission ("RFAs") on LJC on April 2, 2018. (*Id.* ¶ 40.) To date, LJC has not responded to Plaintiffs' RFAs. (*Id.* ¶ 42.) The Stipulation and the unanswered RFAs were both referenced during the July 12, 2018 post-discovery conference, (*see* 7/12/18 Tr.),[7] and in the parties' June 28, 2018 joint letter submitted prior to that conference, (Doc. 31, at 2–3).

On July 23, 2018, LJC filed a "Consent to Change Attorney" form, substituting attorney Michael M. Rabinowitz for LJC's former counsel, Ira A. Sturm. (Doc. 33.)

On August 24, 2018, Plaintiffs filed their motion for summary judgment, (Doc. 35), along with a memorandum of law in support, (Doc. 37), a Rule 56.1 statement, (Doc. 36), and supporting declarations with exhibits, (Docs. 38–41). On November 27, 2018, LJC filed an opposition, (Doc. 60), a counterstatement to Plaintiffs' Rule 56.1 statement, (Doc. 59), and two supporting declarations, (Docs. 57–58). Plaintiffs filed their reply on January 3, 2019. (Docs. 73–74.)

On October 11, 2018—while the parties were briefing Plaintiffs' motion for summary judgment—LJC filed a cross-motion for partial summary judgment, (Doc. 47), a memorandum of law in support, (Doc. 50), a Rule 56.1 statement, (Doc. 51), and supporting declarations, (Docs. 48–49). On November 30, 2018, Plaintiffs filed their opposition, (Doc. 67), a counterstatement to LJC's Rule 56.1 statement, (Doc. 64), and two additional supporting

---

[7] "7/12/18 Tr." refers to the transcript of the July 12, 2018 post-discovery conference in this action. (Doc. 55.)

declarations with exhibits, (Docs. 65–66). LJC filed its reply and supporting papers, (Docs. 68–71), on December 20, 2018.

### III.  <u>Legal Standard</u>

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the

court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations and quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

"The same standard applies where, as here, the parties filed cross-motions for summary judgment . . . ." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing *Terwilliger v. Terwilliger*, 206 F.3d 240, 244 (2d Cir. 2000)). "[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Id.* (citing *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993); *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).

IV.  **Discussion**

In their motion for summary judgment, Plaintiffs first point out that in the parties' Stipulation, LJC admitted liability as to the findings of the Second and Third Audits, as well as most of the findings of the First Audit. (Pls.' Br. 9–10.)[8] As to the First Audit's findings with

---

[8] "Pls.' Br." refers to the Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment Against

respect to the five Disputed Individuals—the only findings that LJC disputed in the Stipulation—Plaintiffs argue that LJC has failed to meet its burden to present evidence to contradict those findings or to raise an issue of fact. (*Id.* at 13–14.) Plaintiffs argue further that summary judgment is appropriate because all of their Requests for Admission are deemed admitted pursuant to Federal Rule of Civil Procedure 36(a)(3) as a result of LJC's failure to respond to those requests. (*Id.* at 11–13.) In its cross-motion for partial summary judgment, LJC argues (1) that the Stipulation must be vacated, (LJC Cross-Motion 5–7);[9] (2) that certain of Plaintiffs' claims are barred by the applicable six-year statute of limitations, (*id.* at 4–5); and (3) that LJC should be granted an opportunity to file belated responses to Plaintiffs' RFAs, (*id.* at 8–10).

For the reasons that follow, I conclude that there are no genuine issues as to any material fact and that Plaintiffs are entitled to judgment as a matter of law.

## A. *Enforceability of March 16, 2018 Stipulation*

In their March 16, 2018 Stipulation, the parties stipulated to all of the Second and Third Audits' findings, as well as the majority of the findings of the First Audit. (Stip. ¶¶ 8–9, 16.) In its cross-motion for partial summary judgment, LJC requests that I vacate the parties' Stipulation, on the ground that the Stipulation is unconscionable and that its enforcement would be manifestly unjust. I disagree.

### 1. Applicable Law

"Under federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court." *PPX Enters., Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir.

---

Defendant LJC Dismantling Corp., filed August 24, 2018. (Doc. 37.)

[9] "LJC Cross-Motion" refers to the Memorandum of Law in Support of Defendant's Cross-Motion for Partial Summary Judgment and Other Relief Against Plaintiffs Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, Training Fund, Health and Safety Fund, and Dominick Giammona, as Funds' Contributions/ Deficiency Manager, filed October 11, 2018. (Doc. 50.)

1984) (citation omitted). "Having agreed on a set of facts, the parties who adopted the stipulation, and this Court, must be bound by them; we are not free to pick and choose at will." *Id.* (quoting *Stanley Works v. FTC,* 469 F.2d 498, 506 (2d Cir. 1972)). A court "should not disturb a stipulation absent a showing of good cause such as fraud, collusion, mistake or duress, or unless the agreement is unconscionable or contrary to public policy, or unless it suggests an ambiguity indicating that the words did not fully and accurately represent the parties' agreement." *Katel Liab. Co. v. AT & T Corp.*, 607 F.3d 60, 66 (2d Cir. 2010) (internal quotation marks omitted); *see also Hallock v. State*, 64 N.Y.2d 224, 230 (1984) ("[O]nly where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation.").

"[A]n unconscionable contract has been defined as one which is so grossly unreasonable as to be [unenforceable] because of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *King v. Fox*, 7 N.Y.3d 181, 191 (2006). A determination of unconscionability generally requires a finding that the agreement at issue was both substantively and procedurally unconscionable at the time it was made. *See Gilman v. Chase Manhattan Bank N.A.*, 73 N.Y.2d 1, 10 (1988).

## 2. Application

LJC contends that the Stipulation is unconscionable on the ground that LJC's former counsel, Ira Sturm, entered into the Stipulation "without [LJC's] knowledge or consent." (LJC Opp'n 2.)[10] As an initial matter, the only evidence that LJC cites in support of this proposition is a conclusory and self-serving affidavit from LJC's Vice President, Benedict Versaci, which

---

[10] "LJC Opp'n" refers to the Memorandum of Law in Opposition to Plaintiffs Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, Training Fund, Health and Safety Fund, and Dominick Giammona, as Funds' Contributions/Deficiency Manager Motion for Summary Judgment and Other Relief, filed November 27, 2018. (Doc. 60.)

states, without elaboration, that Versaci was not aware that Mr. Sturm had signed the Stipulation. (Versaci Decl. ¶ 10.)[11] "Self-serving, conclusory affidavits, standing alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment." *Aersale Inc. v. Ibrahim*, No. 13 Civ. 713(KBF), 2013 WL 5366384, at *3 (S.D.N.Y. Sept. 25, 2013).

However, even accepting that Versaci was ignorant of Sturm's actions, I find that Sturm had authority to enter into the Stipulation on his client's behalf. "A stipulation made by the attorney may bind a client even where it exceeds the attorney's actual authority if the attorney had apparent authority to enter into the stipulation." *Davidson v. Metro. Transit Auth.*, 844 N.Y.S.2d 359, 360 (2d Dep't 2007). Versaci has acknowledged that he personally retained Sturm to represent LJC in this action, (Versaci Decl. ¶ 4), and Sturm was involved in the case from its inception: he filed a notice of appearance on July 10, 2017, (Doc. 10); submitted LJC's answer to both the original and the amended complaints, (Docs. 12, 29); and represented LJC at the initial pretrial conference in November 2017 and at the post-discovery conference in July 2018, (*see, e.g.*, 7/12/18 Tr.). He also engaged in settlement discussions on LJC's behalf. (*See* Doc. 14, at 3; Doc. 31, at 4.) New York courts have held that where an attorney has had a "lengthy involvement in [a] case," including engaging in settlement negotiations and appearing at pretrial conferences, "he ha[s], as a matter of law, apparent authority to enter into a stipulation" on behalf of his client. *Davidson*, 844 N.Y.S.2d at 360; *Arvelo v. Multi Trucking, Inc.*, 599 N.Y.S.2d 301, 302 (2d Dep't 1993) (finding that plaintiffs' "employment of counsel to represent them throughout this litigation . . . precludes th[e] contention" that their counsel lacked authority to bind them to the settlement at issue); *see also Hallock*, 64 N.Y.2d at 231–32

---

[11] "Versaci Decl." refers to the Declaration of Benedict Versaci in Support of Defendant's Cross-Motion for Partial Summary Judgment and Other Relief, filed October 11, 2018. (Doc. 49.) I note that Versaci does not state that he was unaware of the Stipulation's existence, or that others at LJC did not direct, know of, and/or acquiesce to Sturm signing the Stipulation.

(concluding that attorney who had "represented plaintiffs through the litigation, engaged in prior settlement negotiations for them, and . . . appeared at the final pretrial conference" had apparent authority to bind plaintiffs to a settlement agreement).

I therefore find that given Sturm's active representation of LJC since the outset of this litigation, he possessed apparent authority to enter into the Stipulation on LJC's behalf. Versaci's contention that Sturm did so without Versaci's express consent does not render the Stipulation unenforceable. LJC may pursue remedies directly against Sturm if Sturm indeed exceeded his actual authority by entering into the Stipulation; however, it is LJC—and not Plaintiffs—who must bear the responsibility for its former attorney's conduct. *See Hallock*, 64 N.Y.2d at 230 (declining to vacate settlement agreement executed by plaintiffs' former counsel and noting that plaintiffs were "relegated to relief against their former attorney for any damages which his conduct may have caused them"); *see also Davidowitz v. Patridge*, No. 08 Civ. 6962 (NRB), 2010 WL 1779279, at *4 (S.D.N.Y. Apr. 23, 2010) ("[L]itigants are generally bound by the professional conduct of the attorneys they choose to represent them, although the conduct of counsel may give rise to a claim for malpractice by the client." (internal quotation marks omitted)).[12]

Finally, nothing about the terms of the Stipulation appears to be substantively unconscionable. Although Versaci asserts in his declaration that the Stipulation contains "grossly inaccurate" admissions on the part of LJC that are "detrimental to LJC's defense," (Versaci Decl. ¶ 11), he offers no further explanation and fails even to identify which of the Stipulation's terms are allegedly inaccurate. In the Stipulation, LJC does admit many of the

---

[12] I note that despite substituting Rabinowitz for Sturm as counsel of record on July 23, 2018, (*see* Doc. 33), LJC did not seek to vacate the Stipulation until it filed its cross-motion for summary judgment on October 11, 2018.

allegations set forth in Plaintiffs' complaint, (*see* Stip. ¶¶ 8–9, 16); however, the terms of the

agreement are certainly not "so outrageous" as to render them unconscionable. *See Gillman v.*

*Chase Manhattan Bank*, 73 N.Y.2d 1, 12 (1988). Contrary to LJC's contentions, the Stipulation

is not "completely one-sided." (LJC Cross-Motion 5.) The Stipulation benefited LJC in that it

substantially narrowed the disputed issues in the case, thereby allowing LJC to dedicate its

resources to challenging a limited subset of the First Audit's findings.[13] Moreover, by entering

into the Stipulation, Plaintiffs agreed to excuse LJC's wholesale failure to engage in discovery

up to that point. (*See* Stip. ¶¶ 18–20.) In sum, the Stipulation does not come close to

"shock[ing] the conscience and confound[ing] the judgment of any person of common sense."

*Mayaguez S.A. v. Citigroup, Inc.*, No. 16 CIV. 6788 (PGG), 2018 WL 1587597, at *11

(S.D.N.Y. Mar. 28, 2018). LJC's argument that the Stipulation is unconscionable therefore fails.

    For the foregoing reasons, I find that the March 16, 2018 Stipulation is valid and

enforceable. By virtue of the Stipulation, I conclude that there are no issues of material fact with

respect to the findings of the Second and Third Audits or with respect to the findings of the First

Audit as to all LJC employees other than the five Disputed Individuals. Based on the

Stipulation, LJC is liable for $349,561.02 in principal fringe benefit contributions, dues

checkoffs, and PAC contributions in relation to the First Audit period;[14] $187,474.18 in relation

---

[13] It is worth noting that LJC subsequently conceded that it had "no documents to support [its] position," even as to the five employees whose unreported hours calculations remain in dispute. (8/24/18 Mele Decl. Ex. 8.) ("8/24/18 Mele Decl." refers to the Declaration of Joy K. Mele in Support of Plaintiffs' Motion for Summary Judgment, filed August 24, 2018. (Doc. 38.).) This lack of documentation for the individuals whose calculations LJC chose to challenge suggests that LJC may have agreed not to dispute the remaining audit findings because LJC lacked any evidence to support its position.

[14] As discussed in further detail below, *see infra* Part IV.C.2, I also find that LJC is liable for an additional $41,920.57 in principal fringe benefit contributions, dues checkoffs, and PAC contributions, which corresponds to the First Audit's findings regarding the five Disputed Individuals. (*See* Stip. ¶¶ 10–15.) The $349,561.02 figure represents only the First Audit findings to which LJC stipulated, (*see* Stip. ¶ 16), and does not include the amounts due and owing with respect to the Disputed Individuals.

to the Second Audit period;[15] and $119,860.82 in relation to the Third Audit period.  (*See* Stip. ¶¶ 8–9, 16.)

### B. *Statute of Limitations*

In its cross-motion for summary judgment, LJC seeks dismissal of all of Plaintiffs' claims that accrued prior to June 14, 2011.  However, because LJC has failed to set forth any facts suggesting that any of the claims at issue in this litigation in fact accrued prior to that date, I find that LJC's statute of limitations defense fails as a matter of law.

### 1. Applicable Law

"The lapse of a limitations period is an affirmative defense that a defendant must plead and prove."  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *see also Olin Corp. v. Lamorak Ins. Co.*, 332 F. Supp. 3d 818, 874 (S.D.N.Y. 2018) ("To the extent [defendant] believes an affirmative defense forecloses some or all of [plaintiff]'s claims, [defendant] bears the burden of establishing that such a defense applies.").  A statute of limitations defense is also subject to waiver.  *See Ramos v. Comm'r of Soc. Sec.*, No. 19-CV-1718 (CM), 2019 WL 1494033, at *1 (S.D.N.Y. Apr. 2, 2019) ("The failure to comply with the statute of limitations is an affirmative defense subject to waiver . . . .").

ERISA does not provide a statute of limitations; "[t]herefore, the applicable limitations period is that specified in the most nearly analogous state limitations statute."  *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009)

---

[15] Although the Stipulation provides that LJC owes $196,850.83 in principal fringe benefit contributions, dues checkoffs, and PAC contributions in relation to the Second Audit, (Stip. ¶ 8), Plaintiffs subsequently agreed to a $9,376.65 downward adjustment of that amount, for a total of $171,870.00 in principal fringe benefit contributions and $15,604.18 in principal dues checkoffs and PAC contributions, (Pls.' 56.1 ¶¶ 61–62).  Plaintiffs' accounting firm calculated this adjustment based on fifty-nine pages of documents that LJC provided to Plaintiffs on June 27, 2018, (*id.* ¶ 60)—more than three months after the parties entered into the Stipulation and after the close of discovery.  Pursuant to the terms of the Stipulation, Plaintiffs were under no obligation to make this adjustment.

(internal quotation marks omitted). "Under the New York Civil Practice Law and Rules, an action under a contract—for employee benefit plans, in effect, are contracts—must be commenced within six years." *Hirt v. Equitable Ret. Plan for Emps.*, 450 F. Supp. 2d 331, 333 (S.D.N.Y. 2006) (citing N.Y. C.P.L.R. § 213), *aff'd*, 285 F. App'x 802 (2d Cir. 2008). Thus, New York's six-year limitations period for contract actions governs both Plaintiffs' ERISA claims and their state law contract claims. *See La Barbera v. R. Rio Trucking*, No. 03-CV-1508 (SLT)(AKT), 2007 WL 2177063, at *3 (E.D.N.Y. July 27, 2007) (applying six-year limitations period to action pursuant to 29 U.S.C. § 1145).

Although courts look to New York law to provide the limitations period, federal law governs when that period begins to run. *See Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007) ("In a federal question case, . . . when a federal court determines the limitations period by applying an analogous state statute of limitations, the court nevertheless looks to federal common law to determine the time at which the plaintiff's federal claim accrues."). "Under federal law, a claim for delinquent contribution accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *La Barbera v. A. Morrison Trucking, Inc.*, No. 08 CV 3095(RJD)(JO), 2011 WL 703859, at *5 (E.D.N.Y. Feb. 18, 2011) (internal quotation marks omitted); *see also DePasquale v. DePasquale*, No. 12–CV–2564 (RRM)(MDG), 2013 WL 789209, at *13 (E.D.N.Y. Mar. 1, 2013) ("The statute of limitations [in an ERISA action] begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the litigation."), *aff'd*, 568 F. App'x 55 (2d Cir. 2014). In determining when a claim for delinquent contributions accrues, the "crucial question" is when "the Funds had 'sufficient notice of probable discrepancies in the employer's contribution reports that the concept of due diligence required them to investigate.'" *A. Morrison Trucking*, 2011 WL

703859, at *5 (quoting *Mich. United Food & Commercial Workers Unions & Drug & Mercantile Emps. Joint Health & Welfare Fund v. Muir Co.*, 992 F.2d 594, 597–98 (6th Cir. 1993)).

## 2. Application

As an initial matter, I find that LJC waived its statute of limitations defense with respect to all audit findings to which it agreed in the Stipulation. LJC stipulated that it did "not dispute" any of the findings of the Second and Third Audits, or any of the findings of the First Audit (with the exception of those relating to the five Disputed Individuals), "*including the dates, individuals, and hours for which contributions are due.*" (Stip. ¶¶ 8–9, 16 (emphasis added).)[16] LJC's express agreement that it would not challenge the audits' calculations—on the basis of dates or for any other reason—amounts to an unambiguous waiver of its statute of limitations defense as applied to the vast majority of Plaintiffs' claims. For the same reasons that the Stipulation is valid and enforceable, *see supra* Part IV.A.2, the waiver of LJC's statute of limitations defense contained in the Stipulation is also valid. As a result, LJC's limitations defense is preserved only with respect to the First Audit's findings of amounts due and owing for the five Disputed Individuals—the lone issue not disposed of in the parties' Stipulation.

In addition to finding that LJC waived its statute of limitations defense with respect to any and all findings to which LJC agreed in the Stipulation, I also conclude that, as a matter of law, LJC has not carried its burden on the defense with respect to the Disputed Individuals. LJC asserts that all of Plaintiffs' claims "which accrued more than six (6) years prior to Plaintiffs' commencement of this action (all claims prior to June 14, 2011) are time barred." (LJC Cross-

---

[16] Only the First Audit is relevant to LJC's statute of limitations defense as both the Second and Third Audits apply to periods postdating June 14, 2011. (*See* Stip. ¶ 6 (Second Audit period ran from April 1, 2013 through March 31, 2016); *id.* ¶ 7 (Third Audit period ran from April 1, 2016 through October 1, 2017).)

Motion 5.)  LJC, however, makes no attempt in its papers supporting its motion to identify

which, if any, of Plaintiffs' claims in fact accrued prior to June 14, 2011.  S&P, Plaintiffs'

accounting firm, began performing the First Audit on August 22, 2012, (*see* Pls.' 56.1

Counterstatement ¶ 32), and LJC appears to concede that Plaintiffs did not have actual

knowledge of any allegedly delinquent contributions prior to that date.  LJC responds that

Plaintiffs "could have inspected and audited LJC's books and records for the First Audit Period

prior to the time they did so."  (LJC Cross-Motion Reply 3.)[17]  However, this assertion is a red

herring:  the relevant question in determining when Plaintiffs' claims accrued is not whether

Plaintiffs *could have* conducted the First Audit—and thereby learned of LJC's delinquent

contributions—sooner, but instead whether Plaintiffs *should have* conducted the audit sooner.

*See Hanley v. Aperitivo Rest. Corp.*, No. 97 Civ. 5768(MBM), 1998 WL 307376, at *8

(S.D.N.Y. June 11, 1998) ("[T]he key issue in determining when the Funds had reason to know

of the inaccuracies is not whether the Funds could have audited [defendant]'s books at an earlier

time, but rather whether they should have done so." (internal quotation marks omitted)).  In other

words, the key inquiry is "whether the Funds had sufficient notice of probable discrepancies in

the employer's contribution reports that the concept of due diligence required them to investigate

long before they did."  *A. Morrison Trucking*, 2011 WL 703859, at *5 (internal quotation marks

omitted).

        LJC has set forth no facts indicating that Plaintiffs had reason to audit LJC's records prior

to August 22, 2012 (when S&P began the First Audit)—let alone prior to June 14, 2011 (six

years before Plaintiffs filed their complaint).  LJC does not contend, for instance, that the reports

[17] "LJC Cross-Motion Reply" refers to the Reply Memorandum of Law in Further Support of Defendant's Cross-Motion for Partial Summary Judgment and Other Relief Against Plaintiffs Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund, Training Fund, Health and Safety Fund, and Dominick Giammona, as Funds' Contributions/Deficiency Manager, filed December 20, 2018.  (Doc. 70.)

it submitted to Plaintiffs prior to June 2011 put Plaintiffs on notice of likely delinquent

contributions. Courts have refused, in the absence of evidence suggesting that similar funds

were on notice of possible underreporting by employers, to conclude that those funds should

have moved faster in performing their audits. *See, e.g.*, *Gesualdi v. Juda Constr., Ltd.*, No. 10

Civ. 1799(RMB), 2011 WL 5075438, at *10 (S.D.N.Y. Oct. 25, 2011) (rejecting statute of

limitations defense where defendants introduced no evidence that plaintiffs "knew or had reason

to know" of defendants' underpayment of contributions before conducting the relevant audit); *A.

Morrison Trucking*, 2011 WL 703859, at *5 (finding plaintiffs' claims timely where defendant

"offer[ed] no reason why the monthly Remittance Reports that it prepared and delivered to

[plaintiffs] should have alerted [plaintiffs] to irregularities in [defendant's] contributions"); *see

also Bldg. Serv. 32BJ Health Fund v. Nutrition Mgmt. Servs. Co.*, No. 15-cv-03598 (KBF), 2017

WL 946331, at *2 (S.D.N.Y. Feb. 10, 2017) (holding that defendant offered no evidence "that

the irregularities [including discrepancies and late payments] rose to a level that should have

awakened an inquiry by the Fund"). LJC's failure to identify any disclosure or discrepancy that

should have put Plaintiffs on notice of the need to conduct an audit at an earlier date is

particularly egregious given that LJC controlled the flow of information to Plaintiffs and would

therefore be uniquely positioned to identify such evidence, if it existed.

Because LJC bears the burden of proof on this affirmative defense and has failed to

identify in its motion papers any evidence that due diligence required Plaintiffs to audit LJC's

books prior to June 14, 2011, I conclude that no reasonable jury could find in LJC's favor on this

issue. Accordingly, LJC's statute of limitations defense fails as a matter of law. *See, e.g.*, *Olin

Corp.*, 332 F. Supp. 3d at 875 (granting summary judgment in favor of plaintiff on all affirmative

defenses given defendant's failure to "direct[] the Court to any evidence in the record

substantiating any of its affirmative defenses"); *Senisi v. John Wiley & Sons, Inc.*, No. 13CV3314-LTS-AJP, 2015 WL 7736545, at *5 (S.D.N.Y. Nov. 30, 2015) (dismissing statute of limitations defense in light of "utter absence of evidence" in support of defendant's position (internal quotation marks omitted)).

## C. *Five Disputed Individuals*

As to the five LJC employees whose unreported hours calculations in the First Audit remain in dispute, I find that there is no evidence in the record to support LJC's challenge related to those unreported hours calculations. Accordingly, Plaintiffs' motion for summary judgment in the additional amount of $41,920.57 in principal fringe benefit contributions, dues checkoffs, and PAC contributions is granted.

### 1. Applicable Law

Pursuant to ERISA's record-keeping requirements, an employer must "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1). "Employers have an affirmative duty to furnish benefit plans the information needed for the plans' fulfillment of their reporting duties." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15D, AFL-CIO v. Eastport Excavation & Utils. Inc.*, 3 F. Supp. 3d 204, 214 (S.D.N.Y. 2014). Numerous courts in this circuit have held that where a benefit plan produces evidence that raises "genuine questions" concerning an employer's failure to maintain adequate records, "the burden shifts to the employer to come forward with evidence either of the precise number of hours worked or to negate the reasonableness of the inferences to be drawn from the plaintiff fund's evidence." *Id.* (quoting *Gesualdi v. RRZ Trucking Co., LLC*, No. CV 03-3449(ETB), 2011 WL 1988374, at *4 (E.D.N.Y. May 20, 2011)); *see also Trs.*

*of Local 813 Ins. Tr. Fund v. Rogan Bros. Sanitation Inc.*, No. 1:12-cv-6249(ALC)(HBP), 2018 WL 1587058, at *11 (S.D.N.Y. Mar. 28, 2018) (placing the "onus" on the employer "to come forth with evidence challenging the amount produced by the audit").

## 2. Application

Here, Plaintiffs have provided extensive documentation suggesting that LJC failed to maintain accurate records. (*See, e.g.*, Austin Decl. Ex. 1 (audit findings reflecting, *inter alia*, delinquent contributions for the five Disputed Individuals).)[18] These documents set forth detailed calculations of the total fringe benefit, dues checkoff, and PAC contribution deficiencies, on a monthly basis, for each of LJC's employees—including underpayment of $41,920.57 with respect to the Disputed Individuals. (*Id.*) Moreover, LJC stipulated to the vast majority of the findings of the three audits, conceding that it owed more than $650,000 in delinquent contributions. (*See* Stip. ¶¶ 8–9, 16.) Plaintiffs have undoubtedly submitted evidence sufficient to raise a "genuine question" as to LJC's failure to maintain adequate records, and the burden therefore shifts to LJC to present evidence suggesting an error in Plaintiffs' calculations. *Eastport*, 3 F. Supp. 3d at 214.

LJC, however, has failed to produce any evidence undermining Plaintiffs' calculations. First, in its response to the relevant portions of Plaintiffs' Rule 56.1 statement, LJC cites no admissible evidence disputing the findings of the First Audit. (*See* LJC 56.1 Counterstatement ¶¶ 22, 29–33; *see also* L.R. 56.1(d) (requiring that each statement by a party opposing summary judgment "be followed by citation to evidence which would be admissible" at trial).)[19]

---

[18] "Austin Decl." refers to the Declaration of William Austin in Support of Plaintiffs' Motion for Summary Judgment, filed August 24, 2018. (Doc. 41.)

[19] In response to the paragraphs of Plaintiffs' Rule 56.1 statement setting forth the findings of the First Audit, LJC responds, "Contested. While [LJC] does not contest that the First Audit was performed, the accuracy, sufficiency and admissibility of the First Audit is an issue of law to be decided by the Court." (*See* LJC 56.1 Counterstatement ¶¶ 22, 29–33.) This response is insufficient to create an issue of material fact sufficient to preclude summary

Moreover, despite agreeing in the parties' Stipulation that it would produce "all documents regarding the work performed by and the wages paid to the five disputed individuals, including but not limited to weekly payroll records, pay stubs, NYS unemployment records, [and] work logs" by the end of March 2018, (Stip. ¶ 20), LJC produced no responsive documents until the parties' respective summary judgment motions were almost fully briefed.[20] LJC even went so far as to confirm in writing in an email dated June 7, 2018 that "there [we]re no documents to support [LJC's] position on the five individuals." (8/24/18 Mele Decl. Ex. 8.) LJC also failed to comply with the terms of the Stipulation by failing to respond to Plaintiffs' interrogatories relating to the Disputed Individuals. (*See* Stip. ¶ 19; Pls.' 56.1 ¶ 39.)

Finally, LJC failed to respond to Plaintiffs' Requests for Admission, which were served on April 2, 2018. (*See* Pls.' 56.1 ¶¶ 40–42.) It is well established that any matter set forth in a request for admission "is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). In a last-ditch effort to avoid the entry of summary judgment on the disputed First Audit findings, LJC requests an extension of time to respond to Plaintiffs' RFAs. (*See* LJC Cross-Motion 8.) LJC's request to file belated responses to Plaintiffs' RFAs is governed by Federal Rule of Civil Procedure 6(b)(1)(B), which provides that a court may, "for good cause," extend a filing deadline "on

---

judgment where LJC bears the burden of providing documentation to contradict Plaintiffs' calculations and has wholly failed to meet that burden. *See Eastport*, 3 F. Supp. 3d at 214.

[20] The only discovery that LJC has ever provided with respect to the Disputed Individuals came in the form of nine pages of documents that LJC sent to Plaintiffs on December 11, 2018, (*see* 1/3/19 Mele Decl. Ex. 1)—more than six months after the close of discovery, (*see* Doc. 26); nearly five months after LJC's new counsel submitted his notice of appearance, (Doc. 34); and after both parties had filed their respective motions for summary judgment, (Docs. 35, 47). ("1/3/19 Mele Decl." refers to the Declaration of Joy K. Mele in Further Support of Plaintiffs' Motion for Summary Judgment, filed January 3, 2019. (Doc. 73.).) Not only does LJC provide no explanation in its briefing as to how these conclusory documents undermine Plaintiffs' claims but this information provides far too little detail and was produced far too late to seriously challenge any of Plaintiffs' calculations.

motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B); *see also Baker v. David A. Dorfman, P.L.L.C.*, No. 99 CIV. 9385 DLC, 2000 WL 420551, at *5 (S.D.N.Y. Apr. 17, 2000) ("An extension of time in which to respond to discovery requests is available where it is first sought after the time for response has elapsed only if the failure to respond was the result of excusable neglect.").[21] "The failure to follow the clear dictates of a procedural rule, however, generally does not constitute excusable neglect." *Id.* (citing *Canfield v. Van Atta Buick/GC Truck, Inc.*, 127 F.3d 248, 250 (2d Cir. 1997)).

I find LJC's failure to submit a timely response to Plaintiffs' RFAs inexcusable. LJC has refused to participate in discovery since the outset of this action, and has brazenly disregarded each and every discovery deadline, including those deadlines to which it expressly agreed in the Stipulation intended to remedy LJC's failure to respond to prior discovery requests. (*See* Pls.' 56.1 ¶¶ 38–39, 40–42, 58–59.) LJC claims that its prior counsel did not advise LJC that the RFAs had been served. (*See* Versaci Decl. ¶¶ 13–14.) However, for the reasons discussed above, *see supra* Part IV.A.2, Plaintiffs should not be made to suffer the consequences of a purported "breakdown in communication" between LJC and its former counsel. (LJC Cross-Motion 2.) Furthermore, LJC's excuses ring hollow. Even assuming that LJC's former counsel

---

[21] I decline LJC's invitation to apply the "arguably less rigorous standard" of Federal Rule of Civil Procedure 36(b), *see Sea-Land Serv., Inc. v. Citihope Int'l, Inc.*, 176 F.R.D. 118, 122 n.10 (S.D.N.Y. 1997), which states that a court "may permit withdrawal or amendment [of an RFA admission] if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." (*See* LJC Cross-Motion 8.) As Judge Kaplan explained in *Sea-Land Service, Inc.*,

> Rule 36(b) permits the withdrawal or amendment of an admission, thus suggesting that it applies only in circumstances in which a party has filed a timely response to a Rule 36 request but later seeks to change or withdraw its response. Rule 6(b)[], on the other hand, applies where a party simply fails to file any timely response to a Rule 36 request. There is no reason why a party in that position should have the benefit of the arguably more generous Rule 36(b) standard.

176 F.R.D. at 122 n.10.

did not forward Plaintiffs' RFAs to his client, LJC's failure to respond to the RFAs is referenced in various public filings, including Plaintiffs' Rule 56.1 statement, filed on August 24, 2018—a full month after LJC's new counsel filed a notice of appearance. (*See* Pls.' 56.1 ¶¶ 40–42; Doc. 34.) LJC's new counsel was therefore on notice of the outstanding RFAs by no later than August 24, 2018, and yet made no request for an extension of time to respond to the RFAs until October 11, 2018. (*See* LJC Cross-Motion 8.) This delay speaks volumes: if LJC's failure to respond to the RFAs was actually the result of a breakdown in communication between LJC and its prior counsel, LJC has no excuse for failing to promptly take action to remedy the error once new counsel assumed responsibility for the litigation. Courts have denied similar requests to submit belated RFA responses after far shorter delays. *See, e.g.*, *Weinberger v. Provident Life & Cas. Ins. Co.*, No. 97 CIV. 9262 (JGK), 1999 WL 165707, at *1 (S.D.N.Y. Mar. 25, 1999) (concluding that magistrate judge appropriately denied plaintiff's request for an extension of time to respond to defendant's RFAs where plaintiff waited three weeks after his default was brought to his attention before seeking an extension). Even after LJC finally sought an extension of time to respond to Plaintiffs' RFAs, it declined to attach its proposed responses for the Court's review or to assert that "a truthful response to any of the [RFAs] would in fact be a denial." *Id.* at *2. For all of these reasons, I conclude that LJC's "failure to . . . respond to [Plaintiffs'] requests for admission in any way is inexcusable, particularly in light of [its] history of reluctance to participate in discovery in this case." *Baker*, 2000 WL 420551, at *5. LJC's request for an extension of time to respond to Plaintiffs' RFAs is therefore denied.

In sum, I conclude that LJC has failed to sustain its burden to present any evidence to undermine the First Audit's findings with respect to the Disputed Individuals. For that reason, I find that no issues of material fact remain and that LJC is liable for an additional $41,920.57 in

principal fringe benefit contributions, dues checkoffs, and PAC contributions in relation to the First Audit.

### D. *Additional Relief*

Having concluded that Plaintiffs are entitled to the full requested amount of principal fringe benefit contributions, dues checkoffs, and PAC contributions in connection with all three audits, I next turn to Plaintiffs' corresponding request for interest, liquidated damages, audit costs, and attorney's fees.

#### 1. Interest on Unpaid Fringe Benefit Contributions

First, Plaintiffs seek prejudgment interest on all unpaid fringe benefit contributions. In an action to recover delinquent contributions pursuant to 29 U.S.C. § 1145, an award of "interest on the unpaid contributions" is mandatory. 29 U.S.C. § 1132(g)(2)(B); *see also Mason Tenders Dist. Council Welfare Fund v. Kafka Constr., Inc.*, No. 16 Civ. 9911 (KPF), 2018 WL 2138621, at *4 (S.D.N.Y. May 9, 2018) ("ERISA entitle[s] Plaintiffs to collect interest on the unremitted fringe benefit contributions . . . ."); *Mason Tenders Dist. Council v. Aurash Constr. Corp.*, No. 05 Civ. 1891(RCC), 2006 WL 647884, at *2 (S.D.N.Y. Mar. 15, 2006). Pursuant to 29 U.S.C. § 1132(g)(2), interest must be calculated in accordance with 26 U.S.C. § 6621, which Plaintiffs properly applied to the $634,547.92 unpaid principal fringe benefits to calculate interest in the amount of $134,871.37 through August 14, 2018**.** (8/24/18 Mele Decl. Ex. 12.) Plaintiffs are also entitled to interest from August 14, 2018 through the entry of judgment. *See Sabatini v. Briggs*, No. 97 Civ. 6252(DLC), 1999 WL 566854, at *2 (S.D.N.Y. Aug. 3, 1999) (awarding prejudgment interest at the rate provided by 26 U.S.C. § 6621 through the date on which judgment was entered). Plaintiffs are therefore instructed to submit proposed calculations for the interest due on all unpaid fringe benefit contributions for the period since August 14, 2018.

### 2. Liquidated Damages

Section 1132(g)(2) also mandates an award of liquidated damages in an amount equal to the interest on unpaid fringe benefit contributions. 29 U.S.C. § 1132(g)(2)(C); *see also Aurash*, 2006 WL 647884, at *2. Plaintiffs are therefore entitled to liquidated damages of $134,871.37, plus damages equal to the additional interest that accrues from August 14, 2018 through the entry of judgment.

### 3. Interest on Unpaid Dues Checkoffs and PAC Contributions

Plaintiffs are also entitled to prejudgment interest on the outstanding principal dues checkoffs and PAC contributions, at an annual 9% interest rate pursuant to New York law. *See* N.Y. C.P.L.R. § 5001 ("Interest shall be recovered upon a sum awarded because of a breach of performance of a contract."); *id.* § 5004 (setting interest rate at 9% annually "except where otherwise provided by statute"); *see also Kafka*, 2018 WL 2138621, at *5 (collecting cases in which courts in this district have awarded 9% interest on unremitted dues checkoffs and PAC contributions). As of August 14, 2018, the interest due and owing on LJC's unpaid dues checkoffs and PAC contributions amounted to $33,201.70. (8/24/18 Mele Decl. Ex. 13.) Plaintiffs are also entitled to interest from August 14, 2018 through the entry of judgment. The interest due and owing for the period from August 14, 2018 through today is $6,229.05.[22] When added to the amount of interest due as of August 14, 2018, the total interest due to Plaintiffs as of today is $39,430.75. Interest will continue to accrue at a rate of $15.85 per day through the entry of judgment.

---

[22] Using a per annum interest rate of 9%, interest on the $64,268.67 in principal unpaid dues checkoffs and PAC contributions across all three audits, (*see* Pls.' 56.1 ¶¶ 22, 24, 62), is accruing at a rate of $5,784.18 per year. When divided by 365 days, this amounts to a per diem rate of $15.85. In the 393 days that have passed since August 14, 2018, an additional $6,229.05 in interest has accrued.

### 4. Audit Costs

Plaintiffs also seek the actual costs of the three audits, pursuant to § 1132(g)(2)(E), which provides "such other legal or equitable relief as the court deems appropriate." Courts routinely hold that audit fees are recoverable under this provision of ERISA. *See, e.g.*, *Eastport*, 3 F. Supp. 3d at 220 (awarding actual audit fees pursuant to § 1132(g)(2)(E)); *Ferrara v. CMR Contracting LLC,* 848 F. Supp. 2d 304, 313 (E.D.N.Y.2012) ("The costs of an audit are routinely recoverable in ERISA actions."); *RRZ Trucking Co., LLC*, 2011 WL 1988374, at *7 (same).

Plaintiffs seek $78,586.16 in audit costs. (*See* Pls.' 56.1 ¶¶ 90–92.) LJC has not specifically contested the reasonableness of these amounts, (*see* LJC 56.1 Counterstatement ¶¶ 90–92); however, they appear to be quite high, *see, e.g.*, *Eastport*, 3 F. Supp. 3d at 220 (seeking $10,162 in audit fees); *Ferrara*, 848 F. Supp. 2d at 313 (approximately $4,000 in audit fees); *RRZ Trucking Co., LLC*, 2011 WL 1988374, at *7 ($5,567.50 in audit fees). Furthermore, the cost of each of the three audits is substantiated only by a single-page invoice that provides no explanation of how each S&P employee who participated in the audit spent his or her time. (*See* Austin Decl. Ex. 5.) This documentation is insufficient to justify such a significant award. *See Trs. of Four Joint Bds. Health & Welfare & Pension Funds v. Penn Plastics, Inc.*, 864 F. Supp. 342, 350–51 (S.D.N.Y. 1994) (finding that "the auditors' billing reports . . . provide an inadequate basis upon which to award the auditors' fees and expenses claimed" where the records contained a "two-sentence description" of the tasks performed by two auditors). Plaintiffs are therefore directed to provide more detailed, contemporaneous billing records from S&P, which document, for each auditor, the date, the number of hours expended, and the nature of the work. *See id.* at 351; *see also Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181

(S.D.N.Y. 2015) (in attorney's fee context, requiring "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done").

### 5. Attorney's Fees and Costs

Finally, Plaintiffs are entitled to "reasonable attorneys' fees and costs of the action." 29 U.S.C. § 1132(g)(2)(D); *see also Aurash*, 2006 WL 647884, at *2 (noting that award of attorney's fees is mandatory). Plaintiffs' request to submit a full accounting of their fees and costs is granted.

## V.    <u>Conclusion</u>

For the foregoing reasons, Plaintiffs' motion for summary judgment, (Doc. 35), is GRANTED, and LJC's cross-motion for partial summary judgment, (Doc. 47), is DENIED.

Plaintiffs are hereby ORDERED to submit a proposed judgment, along with an updated calculation, pursuant to 26 U.S.C. § 6621, of interest due on all unpaid fringe benefit contributions since August 14, 2018, within 45 days of the date of this Opinion & Order.

Plaintiffs are further ORDERED to submit contemporaneous billing records supporting Plaintiffs' application for audit costs and attorney's fees, within 45 days of the date of this Opinion & Order.

LJC is hereby ORDERED to submit to an audit of its books and records for the period beginning October 2, 2017, within 90 days of the date of this Opinion & Order.

The Clerk of Court is respectfully directed to terminate the motions pending at Documents 35 and 47.

SO ORDERED.

Dated: September 11, 2019
      New York, New York

Vernon S. Broderick
United States District Judge